## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | | |
|---|---|---|
| **KELLY COOKSEY, on behalf of herself and all others similarly situated,** | ) ) ) | **CLASS AND COLLECTIVE ACTION** |
| | ) | **CASE NO.** _3:24-cv-720-DJH_ |
| **PLAINTIFF,** | ) ) | **JUDGE** _____ |
| **v.** | ) ) | **JURY DEMAND** |
| **XCLUSIVE PROFESSIONAL AUTO DETAIL, LLC,** | ) ) ) | **STATEWIDE RELIEF SOUGHT** |
| **and** | ) ) | |
| **MICHAEL W. WARFIELD,** | ) ) | |
| **DEFENDANTS.** | ) ) | |

### *ELECTRONICALLY FILED*

Comes Plaintiff, Kelly Cooksey ("Plaintiff"), by counsel, on behalf of herself and all others similarly situated, and for her Complaint against Defendants, Xclusive Professional Auto Detail, LLC ("XPAD") and Michael W. Warfield ("Warfield") (with XPAD and Warfield collectively referenced as "Defendants"), hereby states as follows:

### I. NATURE OF THE CASE

1.      Wage theft is pervasive and damaging, affecting workers across the United States. It occurs when employers fail to pay employees the full wages they have earned, such as by requiring off-the-clock work, denying overtime pay, or misclassifying employees. Wage theft robs workers and their families of critical income needed for basic necessities, and deprives the government of tax revenue. Wage theft also forces law-abiding businesses to unfairly compete against those that cheat. Ultimately, wage theft erodes worker protections, perpetuates economic

1

inequality, and undermines the principles of a fair and equitable labor market. Addressing this widespread abuse is essential for upholding the rights and dignity of workers nationwide

2.      Since 2009, Defendants operate an auto detailing and window tinting establishment. Defendants deploy an independent misclassification scheme to cheat its employees, its competition, and the state and federal governments. Defendants do so willfully and knowingly by systematically misclassifying its non-management staff. In doing so, Defendants deny these employees, including named Plaintiff, access to critical benefits and protections they are entitled to by law, such as minimum wage, overtime compensation, and indemnification for business expenses/deductions. Through willful misclassification, Defendants also rob federal and state governments of tax revenue, cause losses to state unemployment insurance and workers' compensation funds, and get undue advantage over its law-abiding competition.[1]

3.      Defendants do not even pretend that these "independent contractors" have an opportunity to run and control their own business. Accordingly, every element of the economic realities test resolves in favor of the non-management employees. For example, Defendants' receptionists and detailers represent the key facets of Defendants' operation. They are the administrative, sales, and service staff that solicit clients for Defendants and complete the work that is Defendants' product.

4.      The employees are not contracted for a limited period of time or per project; Defendants hire the employees as full-time, permanent staff for the duration of their employment. Defendants were responsible for scheduling the work to be performed by the

---

[1] *See* U.S. Dept. of Labor, Wage and Hour Division, "Misclassification of Employees as Independent Contractors," available at https://www.dol.gov/agencies/whd/flsa/misclassification (describing the repercussions of misclassification) (last accessed December 10, 2024).

detailers and Defendants dictated the hours the employees are supposed to work. The employees have no control over their schedules.

5.      The employees also have no investment in the Defendants' operations and have no opportunity for profit or loss based on the performance of the company. The employees were not involved in the marketing or market performance of Defendants' company. There was no initiative, judgment, or foresight in open market competition.

6.      Finally, there was no independent business organization or operation on the part of the employees. They were not independently organized or recognized businesses or legal entities with whom Defendants contracted.

7.      Indeed, the U.S. Department of Labor ("DOL") investigated Defendants' operations from April 20, 2021 through April 19, 2023, and determined Defendants did in fact misclassify these employees as independent contractors. The DOL explained the above reasons for the misclassifications to Defendants and advised Defendants to pay back wages to employees and change the way they operate. Defendants ultimately ignored the DOL and continued its willful and brazen violation of federal and state law. Upon information and belief, Defendants' CPA also advised Defendants that they were misclassifying non-management employees. Defendants continue to withhold unpaid wages from Plaintiff and similarly situated individuals to this day despite being told by the DOL such a course of action was unlawful.

8.      Specifically, Defendants employed Plaintiff as a receptionist in 2021, 2022, and 2023. Despite calling her an independent contractor, Plaintiff was an employee in the context of the economic realities test. Defendants required Plaintiff to clock in and out. Plaintiff routinely worked at least 50 hours per week for Defendants, usually from 9:00 AM to 7:00 PM five days per work week. Defendants denied Plaintiff breaks and reasonable meal periods. Further,

Defendants paid Plaintiff a flat hourly rate for all hours worked and did not pay her at a rate of time and a half for hours work in excess of 40 each work week.

9.      Defendants also employed detailers who performed the auto detailing and window tinting work on customers' cars. Defendants treated detailers as independent contractors even though they were employees in the context of the economic realities test. Detailers routinely worked over 40 hours per work week, sometimes until 2:00 or 3:00 o'clock in the morning. Defendants did not, however, pay such detailers at a rate of time and a half for hours worked in excess of 40 each work week. In fact, Defendants paid detailers on a per car basis and not an hourly basis. The amount a detailer earned per car or service was arbitrary and at the whim of Defendants on an ongoing basis. If a detailer made a mistake or caused damage to a vehicle during a service, Defendants would make arbitrary deductions from the piece rate pay. Defendants policy and practice of paying detailers as alleged herein resulted in Defendants' failure to pay detailers for all hours worked.

10.      This action seeks to redress Defendants' exploitative and systemic policy and practice of misclassifying its non-management employees as "independent contractors," resulting, inter alia, in a failure by Defendants to pay these employees overtime wages mandated by the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and the Kentucky Wages and Hours Act, KRS § 337.010 et seq. ("KWHA"). Defendants' misclassification of their employees also resulted in Defendants' unlawful deductions and failure to pay regular wages under the KWHA.

11.      Plaintiff brings this action on behalf of herself and all others similarly situated as a "collective" action under the FLSA as well as a class action under Fed. R. Civ. P. 23 under the KWHA.

## II. PARTIES, JURISDICTION, AND VENUE

12.     Plaintiff is a citizen and resident of Louisville, Jefferson County, Kentucky, residing at 9108 Wilson Ave., Louisville, KY 40242. Plaintiff is a covered employee within the meaning of the FLSA and KWHA. Plaintiff's written Consent to Become Party Plaintiff and Join Collective Action is attached hereto as Exhibit 1.

13.     Defendant, XPAD, is a Kentucky limited liability company which has done business and is currently doing business within this judicial district. XPAD's principal office is located at 1733 Mellwood Ave., Louisville, KY 40206. XPAD's registered agent is Michael W. Warfield, located at 13501 Pointview Court, Louisville, KY 40299.

14.     Defendant, Warfield, is a citizen and resident of Louisville, Jefferson County, residing at 13501 Pointview Court, Louisville, KY 40299. Warfield is the sole owner, member, and manager of XPAD.

15.     Defendants have at all relevant times been "employers" within the meaning of the FLSA and the KWHA.

16.     During the relevant time, Defendants employed Plaintiff and similarly situated employees at its 1733 Mellwood Ave. location in Louisville, Kentucky.

17.     Defendants are subject to personal jurisdiction pursuant to KRS 454.210 because, inter alia, they have transacted business in the Commonwealth of Kentucky and, as statutory employers under the KWHA, have caused injury within the Commonwealth of Kentucky in Jefferson County.

18.     Warfield, among other things: (a) oversees and controls day-to-day operations of XPAD; (b) sets employment policies and practices, including compensation policies and practices for misclassified non-management staff; (c) participates in hiring and firing decisions at

XPAD; (d) conducts meetings with misclassified employees about the policies and practices at issue in this lawsuit; (e) exercises custody and control over the employment records of misclassified employees; (f) exercises control over XPAD's financial affairs and is involved in addressing payroll issues; and (g) otherwise acts directly in the interest of XPAD in relation to its misclassified employees. Per XPAD's website, Warfield "is in-house daily, ensuring the correct products are used, and the job is done right the first time," and "each employee [is] personally trained in the 'Xclusive way' by [Warfield] . . . ."[2]

19.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), 28 USC §§ 1331, 1337, and 1343, and has supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367.

20.     Venue is proper in the Western District pursuant to 28 U.S.C. § 1391.

### III. FACTUAL ALLEGATIONS

21.     Plaintiff and those she seeks to represent in this action are current and former non-management employees of Defendants at their 1733 Mellwood Ave. location in Louisville, Kentucky.

22.     Since 2009, Defendants operate an auto detailing and window tinting establishment. Defendants deploy an independent misclassification scheme willfully and knowingly by systematically misclassifying its non-management staff. When confronted by the DOL, Defendants did not even pretend that these "independent contractors" have an opportunity to run and control their own business.

23.     Every element of the economic realities test resolves in favor of the non-management employees. For example, Defendants' receptionists and detailers represent the key

---

[2] *See* www.xclusiveautodetailing.com/about-xclusive-auto (last visited December 10, 2024).

facets of Defendants' operation. They are the administrative, sales, and service staff that solicit clients for Defendants and complete the work that is Defendants' product.

24.     The employees are not contracted for a limited period of time or per project; Defendants hire the employees as full-time, permanent staff for the duration of their employment. Defendants were responsible for scheduling the work to be performed by the detailers and Defendants dictated the hours the employees are supposed to work. The employees have no control over their schedules.

25.     The employees also have no investment in the Defendants' operations and have no opportunity for profit or loss based on the performance of the company. The employees were not involved in the marketing or market performance of Defendants' company. There was no initiative, judgment, or foresight in open market competition.

26.     Finally, there was no independent business organization or operation on the part of the employees. They were not independently organized or recognized businesses or legal entities with whom Defendants contracted.

27.     The DOL investigated Defendants' operations from April 20, 2021 through April 19, 2023, and determined Defendants did in fact misclassify these employees as independent contractors. The DOL explained the above reasons for the misclassifications to Defendants and advised Defendants to pay back wages to employees and change the way they operate. Defendants ultimately ignored the DOL and continued its willful and brazen violation of federal and state law. Upon information and belief, Defendants' CPA also advised Defendants that they were misclassifying non-management employees. Defendants continue to withhold unpaid wages from Plaintiff and similarly situated individuals to this day despite being told by the DOL such a course of action was unlawful.

28.     Defendants employed Plaintiff as a receptionist in 2021, 2022, and 2023. Despite calling her an independent contractor, Plaintiff was an employee in the context of the economic realities test. Defendants required Plaintiff to clock in and out. Plaintiff routinely worked at least 50 hours per week for Defendants, usually from 9:00 AM to 7:00 PM five days per work week. Defendants denied Plaintiff breaks and reasonable meal periods. Further, Defendants paid Plaintiff a flat hourly rate for all hours worked and did not pay her at a rate of time and a half for hours work in excess of 40 each work week.

29.     Defendants also employed detailers who performed the auto detailing and window tinting work on customers' cars. Defendants treated detailers as independent contractors even though they were employees in the context of the economic realities test. Detailers routinely worked over 40 hours per work week, sometimes until 2:00 or 3:00 o'clock in the morning. Like Plaintiff, Defendants did not pay such detailers at a rate of time and a half for hours worked in excess of 40 each work week. Instead, Defendants paid detailers on a per car basis and not an hourly basis. The amount a detailer earned per car or service was arbitrary and at the whim of Defendants on an ongoing basis. If a detailer made a mistake or caused damage to a vehicle during a service, Defendants would make arbitrary deductions from the piece rate pay. Defendants' policy and practice of paying detailers as alleged herein resulted in Defendants' failure to pay detailers for all hours worked, unlawful deductions, and failure to pay overtime.

30.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and KWHA.

31.     At all relevant times, the work performed by Plaintiff and other non-management staff was directly essential to the business operated by Defendants.

## IV. COLLECTIVE ACTION ALLEGATIONS

32.     Plaintiff asserts her FLSA claims pursuant to 29 U.S.C. § 216(b) as a collective

action on behalf of the following similarly situated employees:

> All current and former non-management employees who were
> subjected to Defendants' policy and practice of misclassification as
> an independent contractor at any time within three years prior to
> the filing of this action, or longer if equitable tolling is granted, to
> the trial of this action (the "Relevant Period") (the "Collective
> Class").

33.     Plaintiff's FLSA claims should proceed as a collective action because Plaintiff

and the collective class, having worked pursuant to the common policies and practices described

herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated

decisional law. Plaintiff and the Collective Class were subjected to Defendants' decisions,

policies, plans, programs, practices, procedures, protocols, routines, and rules – all culminating

in a willful failure and refusal to pay Plaintiff and the Collective Class their proper wages due to

Defendants' misclassification scheme.

34.     The claims for relief are properly brought under and maintained as an opt-in

collective action pursuant to 29 U.S.C. § 216(b). The Collective Class is readily ascertainable

from records Defendants are required by law to maintain. For purposes of notice and other

purposes related to this action, their names and addresses are readily available from Defendants.

Notice can be provided to the Collective Class via first class mail to the last address known to

Defendants, or to the last telephone number or email address known to Defendants.

35.     Plaintiff requests that this Court authorize notice to be circulated to all similarly

situated persons informing them of this action and their right to opt-in under 29 U.S.C. § 216(b).

36.     Although the exact amount of damages may vary among the Collective Class in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

37.     Written consents to join this action will be filed pursuant to 29 U.S.C. § 216(b) as and when executed by other individual plaintiffs.

## V. CLASS ALLEGATIONS

38.     Plaintiff brings this action on her own behalf and, pursuant to Fed. R. Civ. P. 23, on behalf of the following class of individuals:

> All current and former non-management employees who were subjected to Defendants' policy and practice of misclassification as an independent contractor during the Relevant Period (the "Rule 23 Class").

39.     Subject to additional information obtained through further investigation and discovery, the foregoing class definition may be expanded or narrowed by amendment, in the motion for class certification, or at any other time before final judgment.

40.     Plaintiff is a member of the Rule 23 Class she seeks to represent.

41.     The Rule 23 Class members are readily ascertainable because their names and addresses are readily available from Defendants. The hours assigned and worked, the position held, and rates of pay for each Rule 23 Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses and telephone numbers are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

42.     Upon information and belief, Defendants have employed over 40 non-management staff during the Relevant Period. Thus, the Rule 23 class is sufficiently numerous

that joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1). Disposition of claims as a class will benefit the parties and the Court.

43.     Plaintiff and the members of the Rule 23 Class share the same pivotal questions of law and fact, satisfying Fed. R. Civ. P. 23(a)(2). Plaintiff and the members of the Rule 23 Class she seeks to represent were and are subject to the same misclassification scheme. As a result, the Rule 23 Class shares several factual and legal questions, including, for example: (1) whether Plaintiff and the class members were misclassified as independent contractors under Kentucky law; (2) whether Defendants' misclassification of Plaintiff and the class members as independent contractors was willful and/or intentional; (3) whether deducting wages for various expenses or service issues from Plaintiff and class members was illegal; and (4) whether Defendants failed to pay Plaintiff and class members appropriate overtime rates for hours worked in excess of 40 in a work week. Defendants' company-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each class member. Plaintiff and other Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

44.     Plaintiff's claims are typical of the claims of the Rule 23 Class, satisfying Fed. R. Civ. P. 23(a)(3). Defendants' violation of the KWHA is not the result of any Plaintiff-specific circumstances. Rather, it arises from Defendants' common misclassification scheme, which Defendants applied generally to all its non-management staff, including Plaintiff. Thus, in advancing her own claims, Plaintiff will also be advancing the claims of the Rule 23 Class.

45.     Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Class, satisfying Fed. R. Civ. P. 23(a)(4). Plaintiff's interests are shared with the Rule 23

Class and Plaintiff has no interests that conflict with those of the Rule 23 Class. Furthermore, Plaintiff has retained competent counsel experienced in wage and hour litigation under the FLSA and KWHA and representing classes of similarly situated individuals against businesses. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

46.     By implementing an independent misclassification scheme to cheat its employees, Defendants have created a scenario where questions of law and fact common to the Rule 23 Class predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for the fair and efficient adjudication of this matter. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means

of common, class-wide proof. In addition, if appropriate, the Court is empowered to fashion methods to efficiently manage this action as a class action.

47.     Further, this case is well-suited for class action treatment because the burden is on Defendants to prove they properly classified its employees or its employees were exempt.

48.     Defendants and other employers throughout the state violate the KWHA. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Workers reluctantly waive their rights to wage claims by remaining silent in an alarming number of cases as a result of these very real risks. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

49.     Accordingly, Plaintiff is entitled to pursue her claims as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).

## VI. CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FLSA

50.     All previous paragraphs are incorporated as though fully set forth herein.

51.     Plaintiff asserts this claim on behalf of herself and members of the Collective Class who opt into this action by filing a consent form, pursuant to 29 U.S.C. § 216(b).

52.     Plaintiff and the Collective Class are employees entitled to the FLSA's protections.

53.     Defendant is an employer covered by the FLSA.

54.     The FLSA requires covered employes, such as Defendants, to compensate all non-exempt employees at a rate of not less than one and one-half their regular rate of pay for work performed in excess of forty hours per week. 29 U.S.C. § 207. As such, each member of the Collective Class is entitled to overtime compensation at one and one-half times their regular rate of pay for work performed in excess of forty hours per week.

55.     Plaintiff and the Collective Class regularly worked (and continue to work) between 50 and 70 hours per week in accord with Defendants' mandated schedule. Yet Defendants never paid Plaintiff or any member of the Collective Class any overtime pay.

56.     By misclassifying Plaintiff and the Collective Class, failing to pay any overtime wages, and making unlawful deductions from wages, Defendants have violated, and continue to violate the FLSA when total working hours exceed 40 in a workweek. Through this practice, Defendants paid and continue to pay these employees less overtime wages than required under the FLSA.

57.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

58.     Plaintiff seeks damages for herself and all others similarly situated in the amount of Plaintiff's and each similarly situated employee's unpaid overtime wages, an equal amount as liquidated damages, penalties, interest, all costs and attorney fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE KWHA (OVERTIME WAGE VIOLATIONS)

59.     All previous paragraphs are incorporated as though fully set forth herein.

60.    Plaintiff asserts this claim on behalf of herself and members of the Rule 23 Class, pursuant to Fed. R. Civ. P. 23.

61.    Plaintiff and the Rule 23 Class are current or former employees entitled to the KWHA's protections.

62.    Defendants are employers covered by the KWHA.

63.    KRS § 337.285 requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in one workweek.

64.    Plaintiff and the Rule 23 Class regularly worked (and continue to work) between 50 and 70 hours per week in accord with Defendants' mandated schedule. Yet Defendants never paid Plaintiff or any member of the Collective Class any overtime pay.

65.    By misclassifying Plaintiff and the Rule 23 Class, failing to pay any overtime wages, and making unlawful deductions from wages, Defendants have violated, and continue to violate the KWHA when total working hours exceed 40 in a workweek. Through this practice, Defendants paid and continue to pay these employees less overtime wages than required under the KWHA.

66.    By, *inter alia*, implementing the challenged misclassification and pay scheme to circumvent the overtime requirements of the KWHA as alleged herein, Defendant acted willfully and with reckless disregard of clearly applicable provisions of the KWHA.

67.    As a result of Defendant's violations of the KWHA and applicable regulations, Plaintiff and the Rule 23 Class have been injured and are entitled to recover wages for uncompensated time, overtime pay, liquidated damages, penalties, attorney fees, and costs in an amount to be determined at trial.

68.    Plaintiff seeks all available relief under this cause of action.

## COUNT III
## VIOLATIONS OF THE KWHA (REGULAR WAGE VIOLATIONS)

69.    All previous paragraphs are incorporated as though fully set forth herein.

70.    Plaintiff asserts this claim on behalf of herself and members of the Rule 23 Class, pursuant to Fed. R. Civ. P. 23.

71.    Plaintiff and the Rule 23 Class are current or former employees entitled to the KWHA's protections.

72.    Defendants are employers covered by the KWHA.

73.    This is a claim for unpaid regular hourly wages due to Defendants' piece rate pay scheme and unlawful deductions as referenced herein. To the extent Plaintiff and the Rule 23 Class worked during hours which were ultimately not compensated at the minimum rate required by law – that is, hours worked that were uncompensated but were not overtime hours or otherwise do not bring Plaintiff's and similarly situated employees' total hours for the workweek above 40 hours – Plaintiffs and the Rule 23 Class are entitled to recover such unpaid wages.

74.    Moreover, Plaintiff and Rule 23 Class Members are entitled to compensation for rest and recovery periods and other non-productive time separate and apart from any piece rate or hourly rate during which rest periods were not provided by Defendants. As a result of their misclassification, Plaintiff and Rule 23 Class Members are denied compensation for rest and recovery periods and other nonproductive time, in violation of applicable law.

75.    Plaintiff and similarly situated employees have a right to be paid their regular hourly rates, or at least the minimum rate required by law, for all time worked for Defendants. These wages were earned and due on each of the applicable pay periods.

76.    The KWHA provides, *inter alia*, that an employer must pay "all wages and salary earned" on regular pay periods and upon termination of employment. KRS § 337.020, et seq.

77.    The KWHA permits deductions from wages in very limited circumstances which do not apply to Defendants and Plaintiff or the Rule 23 Class. *See* KRS § 337.060.

78.    Defendants' conduct alleged herein was willful and/or knowing.

79.    Plaintiff seeks all available relief under this cause of action

## COUNT IV
## VIOLATIONS OF THE KWHA (UNLAWFUL DEDUCTIONS)

80.    All previous paragraphs are incorporated as though fully set forth herein.

81.    Plaintiff asserts this claim on behalf of herself and members of the Rule 23 Class, pursuant to Fed. R. Civ. P. 23.

82.    Plaintiff and the Rule 23 Class are current or former employees entitled to the KWHA's protections.

83.    Defendants are employers covered by the KWHA.

84.    KRS § 337.060 makes it unlawful for an employer to withhold wages and prohibits deductions from wages such as deductions for fines, cash shortages, breakage, losses, etc.

85.    During the Relevant Period, Defendants had a policy and practice of making unlawful deductions from or charges to the wages of Plaintiff and the Rule 23 Class for materials, business expenses, mistakes, breakage, or service issues.

86.    Defendants made such deductions as part of their misclassification scheme in a willful attempt to cheat Plaintiff and the Rule 23 Class out of earned wages to which they were entitled under the KWHA.

87.    Plaintiff seeks all available relief under this cause of action.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief on behalf of herself and all others similarly situated:

A.     An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b) and designation of Plaintiff as Representative of the Collective Class and Plaintiff's counsel as class counsel;

B.     Prompt notice, pursuant to 29 U.S.C. § 216(b), and to Fed. R. Civ. P. 23, of this litigation to all potential members of the class and collective action;

C.     An order permitting this litigation to proceed as a class action pursuant to the KWHA and Fed. R. Civ. P. 23 and designation of Plaintiff as Representative of the Rule 23 Class and Plaintiff's counsel as class counsel;

D.     A finding that Defendants violated the FLSA and KWHA;

E.     A finding that Defendants' FLSA and KWHA violations are willful and not in good faith;

F.     A judgment against Defendants in favor of Plaintiff and all similarly situated employees for compensation for all unpaid and underpaid wages Defendants failed to pay and continue to refuse to pay in violation of the FLSA and KWHA;

G.     Prejudgment and post-judgment interest to the fullest extent permitted under the law;

H.     Liquidated damages and penalties to the fullest extent permitted under the FLSA and KWHA;

I.     Litigation costs, expenses, and Plaintiff's attorney fees to the fullest extent permitted under the FLSA and KWHA, and the Federal Rules of Civil Procedure; and,

J.    Such other and further relief as this Court deems just and proper in equity and under

the law

## VIII. JURY DEMAND

Plaintiff demands a jury as to all claims so triable.

Date: December 11, 2024                    Respectfully submitted,

*/s/ Aleksandr "Sasha" Litvinov*
Aleksandr "Sasha" Litvinov (KBA # 95598)
**SMITH KRIVOSHEY, PC**
867 Boylston Street
5th Floor #1520
Boston, MA 02116
(617) 377-7404 (Main)
(617) 202-3409 (Direct)
sasha@skclassactions.com

COUNSEL FOR PLAINTIFF, FLSA COLLECTIVE
PLAINTIFFS, AND THE CLASS